465 F.2d 473
 20 Wage & Hour Cas. (BN 867, 68 Lab.Cas. P 32,701,
69 Lab.Cas. P 32,750
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee-Cross Appellant,
v.
ROYAL CROWN BOTTLING COMPANY, INC., et al.,
Defendants-Appellants-Cross Appellees.
 No. 71-3005 Summary Calendar.*
 United States Court of Appeals,
 Fifth Circuit.
 Aug. 18, 1972.
Rehearing and Rehearing En Banc Denied Sept. 19, 1972.
 
 Taylor B. Smith, Threadgill & Smith, Columbus, Miss., for appellants.
 Peter G. Nash, Sol., Bessie Margolin, Associate Sol., U. S. Dept. of Labor, Washington, D. C., Beverly R. Worrell, Regional Sol., U. S. Dept. of Labor, Roger J. Martinson, Atty., U. S. Dept. of Labor, Atlanta, Ga., Carin Ann Clauss, U. S. Dept. of Labor, Washington, D. C., Richard F. Schubert, Sol. of Labor, Sylvia S. Ellison, Jay S. Berke, Attys., United States Department of Labor, Washington, D. C., for appellee.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case involves the applicability of the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. Sec. 201 et seq. to Employer's "driver's helpers" and certain other of its plant employees. After a full trial on the merits the District Court, 324 F.Supp. 342, found that all personnel involved were employees of Employer and engaged in the production of goods for commerce. The Court concluded, therefore, that these employees were covered by the Act and entered judgment in favor of the Secretary of Labor, permanently enjoining Employer from violating the Act and awarding some $35,000 in back wages to the employees involved.
 
 
 2
 On appeal, there is no real dispute over the fact that the plant employees are covered by the Act. Appellant does contend, however, that the Trial Court erred regarding the "driver's helpers," arguing (i) that they are not its employees, (ii) that even if they are its employees, they are not engaged in commerce or the production of goods for commerce and (iii) that the present action is barred by the unappealed decision of the District Court in Goldberg v. Webb, N.D.Miss., 1961, 192 F.Supp. 654, a suit which was brought by the Secretary of Labor against the same company (then operating as a partnership) and involving substantially the same issues. We affirm.
 
 Goldberg v. Webb-No Bar
 
 3
 In 1961 the Secretary of Labor brought an unsuccessful action seeking an injunction against this company to prohibit future violations of the minimum wage, etc., provisions of the Act. In that action, the District Court specifically found that the "driver's helpers" were not employees of the Appellant. This being so, the Court found it unnecessary to pass upon the question of whether or not the "nonemployees" were engaged in commerce or production of goods for commerce within the meaning of the Act.
 
 
 4
 Employer urges that this judgment should operate as a bar to the present action under any one of the following theories: (i) res judicata, (ii) collateral estoppel, and/or (iii) a good faith defense under the Portal-To-Portal Act of 1947, 29 U.S.C.A. Sec. 251 et seq. Credit Service, Inc. v. Fleming, 5 Cir., 1967, 372 F.2d 143, clearly forecloses the arguments concerning collateral estoppel and res judicata, because the District Court was warranted in expressly finding that "there is a different factual situation existing in the case sub judice than that which existed in the former litigation."[1]
 
 
 5
 Concerning the good faith defense argument, the Portal-To-Portal Act-as pointed out in the Secretary's brief-pertains only to a "written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section." Any argument that the voluntary dismissal of the appeal in Goldberg v. Webb by the Secretary would constitute such an "administrative ruling" is foreclosed by Wolferman, Inc. v. Gustafson, 8 Cir., 1948, 169 F.2d 759.
 
 
 6
 Employer also relies upon Wirtz v. Dr. Pepper, 5 Cir., 1967, 374 F.2d 5. That case involved, however, a totally different set of facts. There, the driver's helpers did not perform any duties at the company's plant nor did the company in any way exercise control over the helpers. In that case the Court-having determined that the helpers were not employees of the defendant company-did not reach the question of whether or not the work in which they were engaged was covered by the Act.
 
 
 7
 In the instant case there was substantial evidence to support the Trial Court's finding that the helpers were employees of Royal Crown. Likewise, under Wirtz v. Pepsi Cola Bottling Co. of Augusta, 5 Cir., 1965, 342 F.2d 820, there can be no doubt that the loading and unloading of returnable bottles which ultimately wind up in interstate commerce constitutes work covered by the Act. This is precisely the type of work in which the helpers in this case were regularly engaged.
 
 
 8
 Affirmed.
 
 
 9
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 10
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 *
 Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 This conclusion was based on several considerations. First, the parties involved in the two lawsuits are not the same, since an intervening incorporation resulted in a corporation being the defendant in the present suit, while a partnership was the defendant in the previous litigation. Secondly, and far more importantly, the manner of operation of the employer has changed substantially since the Goldberg v. Webb case. At that time Royal Crown operated one bottling plant and distribution center at Tupelo, Mississippi and a separate bottling plant and distribution center at Columbus, Mississippi (which served the Alabama route). In October 1968 all bottling operations were transferred to the Tupelo location with the result that employees at both locations now participate in the production of goods for interstate commerce. In fact, appellants admit that "after October 25, 1968, employees at the Tupelo Plant were covered by the Act" and that "the Columbus Plant was [also] covered by the Act." Thus, appellants admit a change of operations sufficient to overcome any obstacles otherwise posed by Goldberg v. Webb subsequent to October 25, 1968
 Before that date, however, substantial changes had already occurred. From March, 1968 no bottles were ordered or received at the Columbus Plant and all ordering and receiving at the Tupelo Plant was done with the needs of the Columbus plant taken into consideration. Despite a Company rule that only supervisory personnel and casual workers unload interstate shipments, other employees regularly operated a forklift in unloading and moving these items. Sugar was received from sources outside the State of Mississippi, as were bottles. Thus, while there was no present evidence of such activities in the 1961 suit, by 1966 conditions and operations had obviously changed. Although such was not the case in 1961, by 1966 the employees were engaged in the production of goods for commerce.
 Regarding the drivers' helpers, substantial changes had similarly occurred. In 1961, Judge Clayton had found that the one helper there involved was "1) not hired by defendants, 2) not fired by defendants, 3) not controlled by defendants, 4) not required by defendants, and 5) not paid by defendants." In fact, the driver's helper in 1961 was sometimes no more than just a boy picked up along the route.
 By contrast, the District Court in the present 1970 case found that,
 "the defendants add to the guaranteed minimum weekly wage of the driver-salesman a sufficient amount to take care of the weekly wage of the helper. The helper returns to the plant on Saturday morning to wash and clean the truck, and on occasions while there carries cases of drinks from the warehouse to vehicles of customers who have come to the plant for supplies of soft drinks. The defendants' bookkeeper computes the helper's wages and furnishes a pay envelope for the helper to be delivered to him by the driver-salesman. The driver-salesman does not keep any books, has no federal employer's identification number and makes no federal or state tax return, except income tax returns."
 Additionally, "The trucks are loaded and unloaded in or at the Columbus and Tupelo plants by truck helpers at the direction of the drivers and under the general supervision of the plant superintendent." The record also supports the conclusion that the president of the Company himself assigned helpers to ride with particular drivers on occasion, either to break in new drivers or when the assigned driver was absent. There was testimony that the president had personally fired one helper. Finally, "the helpers on the Mississippi routes are, except for minor exceptions, treated exactly as employees of Royal Crown, including entry of their names on the payroll records of Royal Crown."
 Accordingly, the situation of the drivers' helpers presently employed is substantially different from that of the single assistant picked up along the way involved in the 1961 litigation, and has been at least since 1966 (the pertinent date for this case). As this Court said in Credit Services, Inc. v. Fleming, supra, "it is obvious that the principle of res judicata does not apply, since the issue today is the activities of an entirely different group of people from those who were referred to by name in the earlier judgment."