789 F.2d 678
 13 Soc.Sec.Rep.Ser. 330, Unempl.Ins.Rep. CCH 16,776
Van Lee MILLER, On Account of Richard T. Miller, Deceased,
SSN: mes-wf-owjx Plaintiff/Appellant,
v.
Dr. Otis BOWEN,* Secretary of Health and Human
Services, Defendant/Appellee.
 No. 85-2344.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1986.
Decided May 5, 1986.
 
 Joel F. Friedman, Phoenix, Ariz., for plaintiff/appellant.
 Gregg A. Frampson, Asst. U.S. Atty., Phoenix, Ariz., for defendant/appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before SCHROEDER, CANBY and BOOCHEVER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 In this case we must determine whether there was substantial evidence to support the decision of the Secretary of Health and Human Services (Secretary) that Mr. Miller's death, caused by a cerebral infarction, was not accidental under the provisions of the Social Security Act. We conclude that the Secretary's decision is not supported by substantial evidence.
 
 
 2
 Mr. Miller died approximately one month after he underwent surgery to replace his heart's mitral valve and to repair an aortic valve prosthesis that had been implanted four years earlier. Mr. Miller had been recovering normally from the surgery, and physicians described his long-term prognosis as very good. His death occurred suddenly from a cerebral infarction, the cause of which is in dispute. Van Lee Miller filed an application under the Social Security Act for widow's insurance benefits. The Social Security Administration (SSA) determined that the marriage between Mr. and Mrs. Miller did not meet the duration requirement for benefits. Upon reconsideration the SSA upheld that decision and found further that the death of the insured was not accidental within the meaning of an exception to the duration requirement. Mrs. Miller was thus denied benefits. The administrative law judge considered the case de novo and determined that Mrs. Miller was entitled to widow's insurance benefits because Mr. Miller's death was accidental.
 
 
 3
 The Office of Hearings and Appeals reopened the administrative law judge's decision and after consideration of additional evidence and argument concluded that Mr. and Mrs. Miller did not meet the nine-month duration of marriage requirement, or the exception thereto, and consequently Mrs. Miller was not entitled to widow's insurance benefits. That decision is the final decision of the Secretary of Health and Human Services.
 
 
 4
 Mrs. Miller brought this action under section 205(g) of the Social Security Act, 42 U.S.C. Sec. 405(g) (1982), in district court for reconsideration. The district court granted the Secretary's motion for summary judgment and dismissed Mrs. Miller's complaint. She now appeals and we reverse, remanding for entry of summary judgment for Mrs. Miller on her cross motion.
 
 I. ANALYSIS
 
 5
 Section 202(e) of the Act, 42 U.S.C. Sec. 402(e) (1982 & Supp. I 1983), provides for the payment of monthly benefits to the widow of an individual who died fully insured. The term "widow" is defined by section 416(c)(5) as "the surviving wife of an individual, but only if ... she was married to him for a period of not less than nine months immediately prior to the day on which he died." 42 U.S.C. Sec. 416(c)(5) (1982). The nine month requirement is deemed satisfied where the insured's death is accidental. 42 U.S.C. Sec. 416(k)(1)(A). The death of an individual is accidental "if he receives bodily injuries solely through violent, external, and accidental means and, as a direct result of the bodily injuries and independently of all other causes, loses his life not later than three months after the day on which he receives such bodily injuries." 42 U.S.C. Sec. 416(k).
 
 
 6
 Mrs. Miller was married to her husband for only ten days prior to his death. The sole issue presented by the parties on this appeal is whether death was the result of bodily injuries received solely through external and accidental means, independent of all other causes. The Secretary determined that the evidence failed to establish such cause of death. Our review is limited to whether substantial evidence exists to support the Secretary's decision. 42 U.S.C. Sec. 405(g); Richardson v. Perales, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Bilby v. Schweiker, 762 F.2d 716, 718 (9th Cir.1985). Substantial evidence means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir.1985). We find no such evidence.
 
 
 7
 At issue is whether Mr. Miller's death fits within the requirements of 42 U.S.C. Sec. 416(k) as being caused by bodily injury through violent, external, and accidental means. The Secretary found that the infarction which caused Mr. Miller's death was a "bodily injury"; and further acknowledged that Mr. Miller's death might be interpreted as "violent." The Secretary determined, however, that the evidence failed to establish that Mr. Miller's death resulted from external and accidental means. Thus, specifically at issue is whether the infarction resulting in Mr. Miller's death was caused by an internal or external source of infection and whether that infection was accidental.
 
 A. External Cause of Death
 
 8
 With reference to whether Mr. Miller's death was internally or externally caused, the Secretary concluded that Mr. Miller's death resulted from his general cardiac condition and was therefore internally caused. The Secretary, although acknowledging that Mr. Miller had bacteria in his blood, determined that the insured died because an embolus, formed from atherosclerotic plaque, entered the blood stream, lodged at the brain stem, and resulted in an infarction. The Secretary explained that Mr. Miller "was known to have coronary artery disease and it is well known that atherosclerosis is a generalized disorder. The more probable cause of the cerebral infarction is ischemia from atheromatous occlusion as atherosclerosis was severe in the abdominal aorta and present in the kidneys to a lesser extent." The Secretary provides no medical evidence, however, either that Mr. Miller had atherosclerosis or that plaque from atherosclerosis dislodged and caused the infarction.
 
 
 9
 Furthermore, all evidence as to the cause of the infarction is to the contrary. The autopsy report contradicts the Secretary's conclusion by stating that there was no evidence of "mural thrombi ... in the heart and the aortotomy site and prosthetic valves were free of thrombus." No embolus or venous thrombosis were present in the pulmonary vessels nor was there evidence of fibrosis infarction or embolus in the kidneys.
 
 
 10
 Within a reasonable degree of medical certainty, Dr. Joe Ehrlich observed that the embolus that is believed to have caused Mr. Miller's death originated from a bacterial infection related to the aortic valve replacement. The infection was "more likely ... introduced during the surgical procedure." Mr. Miller's doctor, Dr. Denton Cooley, could "only assume that the blood clot came from the heart valve."
 
 
 11
 Dr. Wayne Dear told Mrs. Miller that her husband's blood infection resulted in a fungus growth on the heart valves, and that penicillin was supposed to dissolve the growth. A fragment of the fungus growth, however, had broken off, entered the blood stream, and lodged at the brain stem, causing Mr. Miller's death. Thus, all of the evidence indicates that the infarction which caused Mr. Miller's death was most likely caused by an external source of infection.
 
 B. Accidental Means
 
 12
 Turning to whether Mr. Miller's death was accidental, we note the redundancy of requiring evidence of "accidental means" to establish "accidental death." 42 U.S.C. Sec. 416(k). The redundant language creates a problem of statutory construction.
 
 
 13
 In issuing regulations, however, the Secretary has interpreted the statute, and we give great deference to that interpretation. See United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); Powderly v. Schweiker, 704 F.2d 1092, 1096 (9th Cir.1983). In 20 C.F.R. Sec. 404.335(a)(2)(i) (1985) the Secretary describes a death as accidental "if it was caused by an event that the insured did not expect."
 
 
 14
 In addition to the regulatory interpretation of 42 U.S.C. Sec. 416(k), the Secretary has provided an administrative interpretation. In a memorandum prepared by the Secretary's Office of General Counsel, and cited by the ALJ in his original favorable decision, the Secretary recognized that "the dispositive inquiry in each case in which the issue [of 'accidental means'] arises is the foreseeability and likelihood of death under the circumstances of that case." The memorandum concluded:
 
 
 15
 Where the result is unforeseeable or unexpected, the means which produced that result may be considered "accidental means," even though they arose out of the voluntary activity of the individual, undertaken in the customary manner.
 
 
 16
 In this case, death from an embolus was an unexpected and relatively unforeseeable consequence of Mr. Miller's voluntary operation. Dr. Cooley concluded after surgery that Mr. Miller was expected to have a smooth recovery and that he would have "a good, long time prognosis in spite of the fact that he had aortic and mitral valve prostheses as well as a coronary bypass." The embolism and death, occurring "almost one month after the operation, at a time when he seemed to be doing well, ... was completely unexpected." Dr. Ehrlich confirmed that death from embolus could not reasonably have been anticipated and was "certainly not a common complication."
 
 
 17
 Based on this medical testimony and the Secretary's interpretation that death by "accidental means" includes death where the result is unforeseeable or unexpected even when it arises from activity voluntarily entered into, it is clear that Mr. Miller's unexpected death arising from his operation was accidental. The Secretary did not make a finding on this specific issue.
 
 II. CONCLUSION
 
 18
 Because any finding that death was not by accidental means would be clearly erroneous in this record it is unnecessary to remand. The Secretary refers to no medical support for his belief that Mr. Miller's death was caused by atherosclerotic plaque. All evidence is to the contrary. Further, that evidence indicates that Mr. Miller's death was accidental within the meaning of 42 U.S.C. Sec. 416(k). When the Secretary fails to provide any medical evidence to support his "belief" of the cause of death and medical experts conclude that the likely cause of death is in fact contrary to the Secretary's theory, the claimant sustains the burden of proof.
 
 
 19
 The record has been thoroughly developed, and it is within our discretion to order that benefits be awarded without remanding the case for additional evidence. See Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.1981). We thus reverse the district court's grant of summary judgment for the Secretary and find that Mr. Miller's death fits within the accidental death exception to the nine month duration requirement. 42 U.S.C. Sec. 416(k)(1)(A). Mrs. Miller is thus entitled to widow's insurance benefits. The district court's grant of summary judgment for the Secretary is reversed and we remand with instructions to grant summary judgment for Mrs. Miller.
 
 
 20
 REVERSED and REMANDED.
 
 
 
 *
 Dr. Otis R. Bowen has been substituted for Margaret M. Heckler pursuant to Fed.R.App.P. 43(c)(1)